**E-FILED**
Friday, 17 September, 2004  01:50:19 PM
Clerk, U.S. District Court, ILCD

# Exhibit C

**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SHORELINE TRANSPORTATION, INC.<br>9920 York Theta Drive<br>North Royalton, Ohio 44133 | )<br>)<br>) |
| and | ) |
| SHORELINE EXPRESS, INC.<br>4161 Ridge Rd.<br>Cleveland, Ohio 44144 | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) |
| TURNWOOD INDUSTRY, INC.<br>13015 York Delta Drive<br>North Royalton, Ohio 44133 | )<br>)<br>) |
| and | ) |
| MENARDS, INC.<br>5106 Old Mill Plaza<br>Eau Claire, Wisconsin 54703-2386 | )<br>)<br>) |
| and | ) |
| GLACIER MOULDINGS, LTD.<br>3927 300th St., N.W.<br>Stanwood, Washington 98292 | )<br>)<br>) |
| and | ) |
| G & T WOOD PRODUCTS<br>1904 Betson Ct.<br>Odenton, Ohio 21113-1124 | )<br>)<br>) |
| and | ) |

**1:02CV1775**

CASE NO.:

**JUDGE GAUGHAN**

**MAG. JUDGE HEMANN**

COMPLAINT

UNIVERSAL BUILDING SYSTEMS, INC. )
2291 Nevada Avenue North )
Minneapolis, Minnesota 55427 )
        )
        and )
        )
BAIRD BROS. SAWMILL, INC. )
7060 Crory Rd. )
Canfield, Ohio 44406-9720 )
        )
        Defendants. )

**NOW COME** Plaintiffs, Shoreline Transportation, Inc. and Shoreline Express, Inc., by and through its undersigned counsel, and hereby file this Complaint against Defendants: Turnwood Industry, Inc. ("Turnwood"); Menards, Inc. ("Menards"); Glacier Mouldings, Ltd. ("Glacier"); G&Γ Wood Products ("G&T"); Universal Building Systems, Inc. ("UBS"); and Baird Bros. Sawmill, Inc. ("Baird"). For its Complaint against Defendants, Plaintiffs Shoreline Transportation, Inc. and Shoreline Express, Inc. aver as follows:

## I. Jurisdiction

1.      This Court has original jurisdiction over the subject matter pursuant to 28 U.S.C. §1331 as this action involves the collection of transportation charges for shipments moving in interstate commerce, pursuant to the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), as codified, at 49 U.S.C. §13101 *et seq.*, 49 U.S.C. §14101 *et seq.* and the Bills of Lading Act ("Pomerene Act") at 49 U.S.C. §80101 *et seq.*

2.      This Court has supplemental jurisdiction over the subject matter pursuant to 28 U.S.C. §1367 as any and all claims are so related by transaction and occurrence within this action, which original jurisdiction exists, that they form part of the same case or controversy.

2

## II. Venue

3.    Venue is proper pursuant to 28 U.S.C. §1391 as a substantial part of the events and/or omissions giving rise to this action occurred within the judicial district.

## III. Parties

4.    Shoreline Transportation, Inc. is a corporation duly organized and existing under the laws of the State of Ohio, with its principal place of business in North Royalton, Ohio. Shoreline Transportation, Inc. is a federally-licensed common motor carrier of general commodities and is engaged in the performance of interstate carriage for hire pursuant to ICCTA.

5.    Shoreline Express, Inc. is a corporation duly organized and existing under the laws of the State of Ohio with its principal place of business in Cleveland, Ohio. Shoreline Express, Inc. is a federally-licensed transportation broker who as a principal or agent of a shipper sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for, transportation by motor carrier for compensation.

6.    Upon information and belief, Turnwood is a corporation duly organized and existing under the laws of the State of Ohio with its principal place of business in North Royalton, Ohio.

7.    Upon information and belief, Menards is a corporation duly organized and existing under the laws of the State of Wisconsin with its principal place of business in Eau Claire, Wisconsin.

8.    Upon information and belief, Glacier is a corporation duly organized and existing under the laws of the State of Washington with its principal place of business in Stanwood, Washington.

3

9.    Upon information and belief, G&T is a corporation duly organized and existing under the laws of the State of Ohio with its principal place of business in Odenton, Ohio.

10.    Upon information and belief, UBS is a corporation duly organized and existing under the laws of the State of Minnesota with its principal place of business in Minneapolis, Minnesota.

11.    Upon information and belief, Baird is a corporation duly organized and existing under the laws of the State of Ohio with its principal place of business in Canfield, Ohio.

## IV. Introductory Background and Factual Allegations

12.    This action relates to a series of transactions involving the shipment of freight in interstate commerce. Defendant Turnwood was involved in each transaction individually and/or through or in concert with the various additional Defendants named herein.

13.    Shoreline Transportation, Inc. is a regional interstate less-than-truckload ("LTL") common motor carrier with a primary service area that encompasses the Northeast, as well as Midwest, portions of the United States.

14.    Shoreline Express, Inc. is a broker of transportation services with a primary service area that is national in scope.

15.    Turnwood is a manufacturer that engages in woodturning and the production of stair parts, as well as cabinets, that it supplies to various vendors such as Menards.

16.    Menards is a Greater Midwest retailer, with 160 store locations, of home improvement items. Turnwood supplies Menards with wood turned stair parts and cabinets that Menards then sells to the general public.

4

17.    G&T, Baird, UBS and Glacier are suppliers of unfinished and finished wood products to Turnwood. Turnwood utilizes these materials in the products it manufactures and supplies to vendors such as Menards.

18.    On or about the first week of December 2001, Shoreline Transportation, Inc., Shoreline Express, Inc. and Turnwood entered into an agreement whereby Shoreline Transportation, Inc. agreed to transport shipments for Turnwood to multiple origins and/or destinations throughout its service area. Shoreline Express, Inc. agreed to arrange for transportation of shipments on behalf of Turnwood from any origin and/or destination location not serviced by Shoreline Transportation, Inc.

19.    Pursuant to the agreement, the operational procedure between the parties consisted of Turnwood contacting Shoreline Transportation, Inc. when a shipment was ready to be transported either from or to the Turnwood facility in North Royalton, Ohio.

20.    Upon being contacted by Turnwood, Shoreline Transportation, Inc. personnel would make an initial determination whether the shipment(s) origin and/or destination location was actually in the coverage area serviced by Shoreline Transportation, Inc. If so, Shoreline Transportation, Inc. would then dispatch a driver along with the necessary equipment to pick-up the shipment(s) and then deliver them.

21.    On some occasions, Turnwood would call in shipment(s) where Shoreline Transportation, Inc. did not service the origin or destination location. In such instances, Shoreline Transportation, Inc. would transfer all information to Shoreline Express, Inc. for proper routing.

5

22.     Taking all the information provided by Shoreline Transportation, Inc., Shoreline Express, Inc., would then arrange for transportation of any shipment(s) for Turnwood by utilizing various motor carriers who actually serviced the origin and destination points.

23.     Any carriers utilized by Shoreline Express, Inc. would then pick-up and/or deliver any shipment(s), or, alternatively, if the originating carrier did not service the destination point directly, that carrier would interline the shipment(s) to another carrier for furtherance to the final destination.

24.     Depending on whether it was Shoreline Transportation, Inc., or Shoreline Express, Inc., who was the service provider, that company would then individually invoice the responsible party for the provided transportation and/or brokerage services.

25.     Shoreline Express, Inc.'s invoices would include the transportation charges of the motor carrier that was utilized. In addition, a brokerage fee was added to the transportation charges in order to arrive at the total amount due. When Turnwood remitted payment, Shoreline Express, Inc. was to forward the transportation amount to the performing motor carrier and retain the brokerage fee amount for services rendered.

26.     On or about December 19, 2001, the relationship commenced with an initial shipment picked up by Shoreline Transportation, Inc. at the Turnwood facility that was consigned to a Menards retail store in Eau Claire, Wisconsin.

## V.     Transportation Services Provided by Shoreline Transportation, Inc.

### A.     Outbound Prepaid Shipments:

27.     Between December 2001 and July 2002, Turnwood prepared approximately one hundred sixty-six (166) prepaid Uniform Bills of Lading ("UBOL") as contracts for the carriage of interstate freight by Shoreline Transportation, Inc.

6

28.    The UBOL were executed by Turnwood shipping personnel and given to Shoreline Transportation, Inc.'s drivers at the time of the shipments pick up.

29.    Between December 2001 and July 2002, Turnwood tendered to Shoreline Transportation, Inc. the shipments that are subject to the aforementioned UBOL.

30.    All transportation services provided by Shoreline Transportation, Inc. were performed in accordance with the UBOL pursuant to the Pomerene Act codified at 49 U.S.C. §80102, 49 U.S.C. §80103(b), 49 U.S.C. §80110 and Shoreline Transportation, Inc.'s rules tariffs.

31.    Pursuant to the UBOL, Shoreline Transportation, Inc. picked up and transported the tendered shipments to the appropriate destinations. All of these shipments were destined to various Menards retail stores throughout the Midwest.

32.    Under federal transportation law, a motor carrier has the right to look for compensation of freight charges from the person or entity requiring the motor carrier to perform the transportation services. Generally, this is the shipper ("Consignor").

33.    However, the receiver ("Consignee") is secondarily liable by a presumptive ownership of the goods and accepting delivery of the goods as well as the services rendered so as to give rise to an implied agreement to pay such freight charges.

34.    The "prepayment" of the freight charges was nothing more than the extension of credit to Turnwood, who was bound to make the credit good. Absent payment by Turnwood, Shoreline Transportation, Inc. may look to Menards for compensation as they accepted delivery of the freight and received the benefit of the transportation services provided by Shoreline Transportation, Inc.

7

35.    Pursuant to 49 U.S.C. §§13706 and 13707 both Turnwood and Menards are legally obligated to pay the full applicable charges that are due and owing to Shoreline Transportation, Inc.

36.    Pursuant to 49 U.S.C. §14705(a) Shoreline Transportation, Inc., is obligated to collect the full applicable charges that are due and owing from either Turnwood or Menards.

37.    Shoreline Transportation, Inc. performed all the terms and conditions set forth in the issued UBOL and is, therefore, owed the sum of Twenty-Four Thousand Two Hundred Sixty-Three and 60/100 Dollars ($ 24,263.60) as unpaid transportation charges for services rendered.

38.    All freight charges for the approximately 166 shipments remain outstanding and unpaid. A true, accurate and complete spreadsheet detailing all Shoreline Transportation, Inc.'s charges for these transportation services is attached hereto, and incorporated herein by reference, as Exhibit A.

39.    Shoreline Transportation, Inc. has made a demand for payment from both Turnwood and Menards as they have breached the UBOL terms and conditions by failing and/or refusing to pay Shoreline Transportation, Inc. the outstanding transportation charges.

40.    Consequently, since Turnwood and Menards have failed to remit payment they are jointly and severally liable for the said amount of $24,263.60.

**B.    Inbound Collect Shipments:**

41.    Between December 2001 and July 2002, G&T and Baird prepared UBOL as contracts for the carriage of freight destined to the Turnwood facility in North Royalton, Ohio.

42.    The UBOL were executed by G&T and Baird shipping personnel and given to Shoreline Transportation, Inc.'s drivers at the time of the shipments' pick up.

8

43.    All UBOL were marked "Collect."

44.    Each UBOL provided that "Subject to Section 7 of the conditions, if this shipment is to be delivered to the Consignee without recourse on the Consignor, the Consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of the freight and all other charges."

45.    Section 7 was not executed on any of the UBOL executed by G&T and Baird.

46.    Between December 2001 and July 2002, G&T and Baird tendered to Shoreline Transportation, Inc. the shipments that are subject to the aforementioned UBOL.

47.    All transportation services provided by Shoreline Transportation, Inc. were performed in accordance with the UBOL pursuant to the Pomerene Act codified at 49 U.S.C. §80102, 49 U.S.C. §80103(b), 49 U.S.C. §80110 and Shoreline Transportation, Inc.'s rules tariffs.

48.    All shipments were transported and delivered to Turnwood who accepted said shipments without any loss and/or damage notation on the delivery receipts.

49.    Under federal transportation law, a motor carrier has the right to look for compensation of freight charges from the person or entity requiring the motor carrier to perform the transportation services. Generally, this is the Consignor. For these shipments, G&T and Baird were the Consignors shipping the goods.

50.    However, the Consignee is secondarily liable by a presumptive ownership of the goods and accepting delivery of the goods as well as the services rendered so as to give rise to an implied agreement to pay such freight charges. Turnwood accepted delivery of the shipments shipped by G & T and Baird.

9

51.    By accepting delivery of the freight, Turnwood accepted liability for payment of the freight charges as it is the presumptive owner of the goods and it received the benefit of transportation services provided by Shoreline Transportation, Inc.

52.    G&T and Baird remain liable since Turnwood has not remitted payment for the freight charges and Section 7 non-recourse provision was not executed on the UBOL.

53.    Pursuant to 49 U.S.C. §§13706 and 13707, Turnwood, G&T and Baird are obligated to pay the full applicable charges that are due and owing for the respective shipments.

54.    Pursuant to 49 U.S.C. §14705(a) Shoreline Transportation, Inc., is obligated to collect the full applicable charges that are due and owing from Turnwood, G&T and Baird for the respective shipments.

55.    Shoreline Transportation, Inc. performed all the terms and conditions set forth in the issued UBOL and is, therefore, owed the sum of Three Hundred Seventy-Five and 00/100 Dollars ($375.00) as unpaid transportation charges. See Exhibit A.

56.    Shoreline Transportation, Inc. has made a demand for payment from G&T, Baird and Turnwood as they have breached the UBOL terms and conditions by failing and/or refusing to pay Shoreline Transportation, Inc. the outstanding transportation charges.

57.    Consequently, since G&T, Baird and Turnwood have failed to remit payment, G&T and Turnwood are jointly and severally liable for $200.00 and Baird and Turnwood are jointly and severally liable for $175.00.

### VI. Transportation Brokerage Services Provided by Shoreline Express, Inc.

**A.    Outbound Prepaid Shipments:**

58.    Between December 2001 and June 2002, Shoreline Express, Inc. arranged for the transportation by motor carrier of over three hundred (300) shipments on behalf of Turnwood.

10

59.    Between December 2001 and July 2002, Turnwood prepared approximately 300 prepaid UBOL as contracts for the carriage of interstate freight.

60.    The UBOL were executed by Turnwood shipping personnel and given to various motor carrier's drivers that Shoreline Express, Inc. had arranged to pick up the shipments.

61.    Between December 2001 and July 2002, Turnwood tendered to various motor carriers the shipments that are subject to the aforementioned UBOL.

62.    Pursuant to the UBOL, the various motor carriers picked-up and transported the tendered shipments to the appropriate Consignees. All of these shipments were destined to various Menards retail stores throughout the Midwest.

63.    All transportation services provided by the various motor carriers were performed in accordance with the UBOL pursuant to the Pomerene Act codified at 49 U.S.C. §80102, 49 U.S.C. §80103(b), 49 U.S.C. §80110 and the various motor carrier's applicable rules tariffs.

64.    Upon delivery to the numerous Menards locations throughout the Midwest, the various delivering motor carriers would obtain a signed delivery receipt from the Menards retail stores for each shipment.

65.    Any notation of loss and/or damage to the shipment would be noted by Menards on the said delivery receipt.

66.    The delivering carrier would then submit the signed delivery receipt, along with an invoice for all transportation charges, to Shoreline Express, Inc. for payment.

67.    As an agent of Turnwood, and pursuant to 49 C.F.R. §371.10, Shoreline Express, Inc. had a legal responsibility to comply with 49 U.S.C. §§13706 and 13707 for the payment of all freight charges that were due and owing to the various motor carriers who had transported Turnwood's shipments in interstate commerce.

11

68.    As such, Shoreline Express, Inc. did pay the various motor carriers invoices for all transportation charges on Turnwood's shipments.

69.    Subsequently, Shoreline Express, Inc. invoiced Turnwood for the provided brokerage services, as well as the transportation charges paid to the various motor carriers, on each shipment.

70.    Turnwood was to remit payment to Shoreline Express, Inc. for the requested brokerage services, as well as all transportation charges paid to the various motor carriers, utilized in transporting the freight on Turnwood's behalf.

71.    All transportation services provided by the various motor carriers utilized by Shoreline Express, Inc. were performed in accordance with the UBOL pursuant to the Pomerene Act codified at 49 U.S.C. §80102, 49 U.S.C. §80103(b), 49 U.S.C. §80110 and Shoreline Transportation, Inc.'s rules tariffs.

72.    Pursuant to the UBOL, the various motor carriers that Shoreline Express, Inc. utilized picked up and transported the tendered shipments to the appropriate destinations.  All of these shipments were destined to various Menards retail stores throughout the Midwest.

73.    The "prepayment" of the freight charges was nothing more than the extension of credit to Turnwood, who was bound to make the credit good.  Absent payment by Turnwood, Shoreline Express, Inc. may look to Menards for compensation as they accepted delivery of the freight and received the benefit of the transportation services provided by the various motor carriers utilized by Shoreline Express, Inc.

74.    Pursuant to 49 U.S.C. §§13706 and 13707 both Turnwood and Menards are legally obligated to pay the full applicable charges that are due and owing.

75. Shoreline Express, Inc. performed the requested brokerage services and is now owed the sum of Fifty-seven Thousand Four Hundred Thirty-eight and 40/100 Dollars ($57,438.40) for unpaid brokerage fees and the reimbursement of transportation charges paid to the various motor carriers on behalf of Turnwood and Menards.

76. Shoreline Express, Inc. has made a demand for payment from both Turnwood and Menards as they have breached both the UBOL terms and conditions and the brokerage agreement by failing and/or refusing to pay Shoreline Express, Inc. the outstanding brokerage and transportation charges. A true, accurate and complete spreadsheet detailing all Shoreline Express, Inc.'s charges for brokerage and transportation services is included and incorporated herein by reference in Exhibit A.

77. Consequently, since Turnwood and Menards have failed to remit payment they are jointly and severally liable for the said amount of $57,438.40.

**B.    Inbound Collect Shipments:**

78. Between December 2001 and June 2002, Shoreline Express, Inc. arranged for the transportation by motor carrier of approximately twelve (12) Collect shipments on behalf of Turnwood.

79. Between December 2001 and July 2002, UBS and Glacier prepared UBOL as contracts for the carriage of interstate freight for approximately two of the said 12 Collect shipments.

80. The UBOL were executed by UBS and Glacier shipping personnel and given to the motor carriers' drivers that Shoreline Express, Inc. had arranged to pick up the shipments.

81. Each UBOL was marked "Collect."

13

82.    Each UBOL provided that "Subject to Section 7 of the conditions, if this shipment is to be delivered to the Consignee without recourse on the Consignor, the Consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of the freight and all other charges."

83.    Section 7 was not executed on any of the UBOL executed by UBS and Glacier.

84.    Between December 2001 and July 2002, UBS and Glacier tendered to the motor carriers that were utilized by Shoreline Express, Inc. the shipments that are subject to the aforementioned UBOL.

85.    All transportation services provided by the various motor carriers were performed in accordance with the UBOL pursuant to the Pomerene Act codified at 49 U.S.C. §80102, 49 U.S.C. §80103(b), 49 U.S.C. §80110 and the various motor carrier's applicable rules tariffs.

86.    Pursuant to the UBOL, the motor carriers picked up and transported the tendered shipments to the appropriate Consignee. All of these shipments were destined to Turnwood's facility in North Royalton, Ohio.

87.    Upon delivery to the Turnwood facility in North Royalton, Ohio, the delivering motor carriers obtained a signed delivery receipt from Turnwood.

88.    There were no notations on the delivery receipts of any loss and/or damage to the shipments.

89.    The delivering carriers then submitted the signed delivery receipts, along with an invoice for all transportation charges, to Shoreline Express, Inc. for payment.

90.    As an agent of Turnwood, and pursuant to 49 C.F.R. §371.10, Shoreline Express, Inc. had a legal responsibility to comply with 49 U.S.C. §§13706 and 13707 for the payment of

14

all freight charges that were due and owing to the motor carriers utilized for the UBS and Glacier shipments that were transported in interstate commerce to Turnwood.

91.    As such, Shoreline Express, Inc. paid the motor carriers invoices for all transportation charges on the UBS and Glacier shipments to Turnwood.

92.    Subsequently, Shoreline Express, Inc. invoiced Turnwood for the provided brokerage services, as well as the transportation charges paid to the motor carriers, on each shipment.

93.    Turnwood was to remit payment to Shoreline Express, Inc. for the requested brokerage services, as well as all transportation charges previously paid to the various motor carriers, utilized in transporting the freight on Turnwood's behalf.

94.    Between December 2001 and July 2002, Turnwood requested the brokerage of inbound collect shipments from Shoreline Express, Inc. amounting to Two Thousand Nine Hundred Seventy-Five and 00/100 Dollars ($2,975.00). See Exhibit A.

95.    Shoreline Express, Inc. performed the requested brokerage services and is now owed the sum of $2,975.00 for unpaid brokerage fees and the reimbursement of transportation charges paid to the various motor carriers on behalf of Turnwood, UBS and Glacier.

96.    By accepting delivery of the freight, Turnwood accepted liability for payment of the freight charges as it is the presumptive owner of the goods and it received the benefit of transportation services provided by Shoreline Transportation, Inc.

97.    G&T and Baird remain liable since Turnwood has not remitted payment for the freight charges and Section 7 was not executed on the UBOL.

15

98.    Shoreline Express, Inc. has made a demand for payment from Turnwood, UBS and Glacier as they have breached the UBOL terms and conditions by failing and/or refusing to pay Shoreline Express, Inc. the outstanding brokerage and transportation charges.

99.    Consequently, since Turnwood, UBS, and Glacier failed to remit payment, Turnwood and UBS are jointly and severally liable for $300.00 and Turnwood and Glacier are jointly and severally liable for $2,675.00.

## VII. Other Transportation Services Provided by Shoreline Transportation, Inc. for the benefit of Turnwood

100.    On or about May 31, 2002, Turnwood caused to be prepared one (1) UBOL as a contract for carriage of freight.

101.    The UBOL was executed by shipping personnel at Cherry Auto Parts in Toledo, Ohio.

102.    On May 31, 2002 Cherry Auto Parts tendered one BMW engine to Shoreline Transportation, Inc. that was subject to the aforementioned UBOL.

103.    All transportation services provided by Shoreline Transportation, Inc. were performed in accordance with the UBOL pursuant to the Pomerene Act codified at 49 U.S.C. §80102, 49 U.S.C. §80103(b), 49 U.S.C. §80110 and Shoreline Transportation, Inc.'s rules tariffs.

104.    Pursuant to the UBOL, Shoreline Transportation, Inc. picked up and transported the tendered shipment to Dan's Auto in Strongsville, Ohio.

105.    Upon delivery to Dan's Auto, Shoreline Transportation, Inc. obtained a signed delivery receipt.

106.    There were no notations on the delivery receipts of any loss and/or damage to the shipment.

16

107.    Under federal transportation law, payment responsibility with respect to the liability of freight charges can be shifted to a third party not named as the consignor or consignee on the UBOL.

108.    Turnwood was listed on the UBOL as the third party payer for said transportation services.

109.    Pursuant to 49 U.S.C. §13706 and 13707 Turnwood is legally obligated to pay the full applicable charges that are due and owing.

110.    Pursuant to 49 U.S.C. §14705(a) Shoreline Transportation, Inc., is obligated to collect the full applicable charges that are due and owing from Turnwood only.

111.    Shoreline Transportation, Inc. performed all the terms and conditions set forth in the issued UBOL and is, therefore, owed the sum of Two Hundred and 00/100 Dollars ($200.00) as unpaid transportation charges for services rendered.

112.    All freight charges for the 1 shipment remain outstanding and unpaid.  See Exhibit A.

113.    Shoreline Transportation, Inc. has made a demand for payment from Turnwood as it has breached the UBOL terms and conditions by failing and/or refusing to pay Shoreline Transportation, Inc. the outstanding transportation charges.

114.    Consequently, since Turnwood has failed to remit payment it is liable for the said amount of $200.00.

### VIII.  Transportation Brokerage Services Provided by Shoreline Express, Inc. Without Recourse on Consignor

115.    Between December 2001 and June 2002, Shoreline Express, Inc. arranged for the transportation by motor carrier of approximately five (5) Collect shipments on behalf of Turnwood.

17

116.    Between December 2001 and July 2002, Babcock Lumber Company ("Babcock") and Miller Wood Designs ("Miller") prepared UBOL as contracts for the carriage of freight for the said Collect shipments.

117.    The UBOL were executed by Babcock and Miller shipping personnel and given to the motor carriers' drivers that Shoreline Express, Inc. had arranged to pick up the shipments.

118.    Each UBOL was marked "Collect."

119.    Each UBOL provided that "Subject to Section 7 of the conditions, if this shipment is to be delivered to the Consignee without recourse on the Consignor, the Consignor shall sign the following statement. The carrier shall not make delivery of this shipment without payment of the freight and all other charges."

120.    Section 7 was executed on all UBOL issued by Babcock.

121.    Section 7 was not executed on all UBOL issued by Miller.

122.    Between December 2001 and July 2002, Babcock and Miller tendered to the various motor carriers utilized by Shoreline Express, Inc. the shipments that are subject to the aforementioned UBOL.

123.    All transportation services provided by the various motor carriers were performed in accordance with the UBOL pursuant to the Pomerene Act codified at 49 U.S.C. §80102, 49 U.S.C. §80103(b), 49 U.S.C. §80110 and the various motor carrier's applicable rules tariffs.

124.    Pursuant to the UBOL, the various motor carriers picked up and transported the tendered shipments to the appropriate Consignee. All of these shipments were destined to Turnwood's facility in North Royalton, Ohio.

125.    Upon delivery to the Turnwood facility in North Royalton, Ohio, the delivering motor carriers obtained a signed delivery receipt from Turnwood.

18

126.    There were no notations on the delivery receipts of any loss and/or damage to the shipments.

127.    The delivering carriers then submitted the signed delivery receipts, along with an invoice for all transportation charges, to Shoreline Express, Inc. for payment.

128.    As an agent of Turnwood, and pursuant to 49 C.F.R. §371.10, Shoreline Express, Inc. had a legal responsibility to comply with 49 U.S.C. §§13706 and 13707 for the payment of all freight charges that were due and owing to the motor carriers utilized for the Babcock and Miller shipments that were transported in interstate commerce to Turnwood.

129.    As such, Shoreline Express, Inc. paid the motor carriers invoices for all transportation charges on the Babcock and Miller shipments to Turnwood.

130.    Subsequently, Shoreline Express, Inc. invoiced Turnwood for the provided brokerage services, as well as the transportation charges paid to the motor carriers, on each shipment.

131.    Turnwood was to remit payment to Shoreline Express, Inc. for the requested brokerage services, as well as all transportation charges previously paid to the various motor carriers, utilized in transporting the freight on Turnwood's behalf.

132.    Between December 2001 and July 2002, Turnwood requested the brokerage of inbound Collect shipments from Shoreline Express, Inc. amounting to Two Thousand One Hundred Seventy-Five and 00/100 Dollars ($2,175.00). See Exhibit A.

133.    Shoreline Express, Inc. performed the requested brokerage services and is now owed the sum of $2,175.00 for unpaid brokerage fees and the reimbursement of transportation charges paid to the various motor carriers on behalf of Turnwood, Babcock and Miller.

19

134.    By accepting delivery of the freight, Turnwood accepted liability for payment of the freight charges as it is the presumptive owner of the goods and it received the benefit of transportation services provided by the various motor carriers utilized by Shoreline Express, Inc.

135.    Miller Wood Designs is liable since Turnwood has not remitted payment for the freight charges and Section 7 was not executed on the UBOL.

136.    Shoreline Express, Inc. has made a demand for payment from Turnwood and Miller as they have breached the UBOL terms and conditions by failing and/or refusing to pay Shoreline Express, Inc. the outstanding brokerage and transportation charges.

137.    On or about August 15, 2002, in return for a settlement and release, Miller remitted payment in the amount of Two Hundred Fifty and 00/100 Dollars ($250.00) for half of the outstanding brokerage and transportation charges on the two shipments to which it was a party.

138.    As such, there is a remaining balance of Two Hundred and 00/100 Dollars ($200.00) on these two shipments that remain due and owing by Turnwood.

139.    Since Babcock executed the Section 7 non-recourse provision on the UBOL to which it was a party, Turnwood remains primarily liable for the amount of One Thousand Nine Hundred Seventy-five and 00/100 Dollars ($1,975.00).

140.    Consequently, since Turnwood has failed to remit payment, it is liable for the amount of Two Thousand One Hundred Seventy-five and 00/100 Dollars ($2,175.00).

### IX. COUNT ONE

### [BREACH OF INTERSTATE TRANSPORTATION CONTRACTS]

141.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 140 of this Complaint as if fully rewritten herein, and further aver as follows:

20

142.    The matters complained of herein, and the liability of the Defendants, are predicated upon the interstate transportation of goods by Plaintiffs pursuant to UBOL and ICCTA.

143.    Defendants entered into and accepted contracts for carriage of shipments in interstate commerce.

144.    Defendants tendered shipments for interstate transit.

145.    Plaintiffs performed all the terms and conditions of motor carriage in accordance with the UBOL.

146.    Defendants are legally obligated to pay for the full applicable charges due and owing to Plaintiffs.

147.    Despite timely and repeated demands by Plaintiffs, Defendants have failed and/or refused to pay Plaintiffs the outstanding transportation and/or other related charges.

148.    Pursuant to the UBOL and ICCTA §§13706 and 13707, Defendants are liable to Plaintiff Shoreline Transportation, Inc. in the sum of Twenty-Four Thousand Eight Hundred Thirty-Eight and 60/100 Dollars ($24,838.60) and Plaintiff Shoreline Express, Inc. in the sum of Sixty-Two Thousand Five Hundred Eight-Eight and 40/100 ($62,588.40).

149.    The unpaid amounts owed are liquidated amounts which became due on specified dates, thus, Plaintiffs are entitled to a rate of interest equal to the average accepted auction price for the last auction of fifty-two (52) week United States Treasury bills settled immediately prior to the entry of the judgment calculated daily for each specific due date and compounded annually.

21

## X. <u>COUNT TWO</u>

## [BREACH OF CONTRACT]

150.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 149 of this Complaint as if fully rewritten herein.

151.    Plaintiffs entered into a contract whereby Turnwood agreed to pay Plaintiffs for transportation and brokerage services.

152.    Pursuant to the agreement, Plaintiffs provided the requested transportation and brokerage services in a professional, efficient and effective manner.

153.    Defendants are legally obligated to pay for the full applicable charges due and owing to Plaintiffs.

154.    Despite timely and repeated demands by Plaintiffs, Turnwood has not paid for the transportation and brokerage services and is in breach of the agreement and as a result Plaintiff Shoreline Transportation, Inc. has been damaged in the amount of Twenty-Four Thousand Eight Hundred Thirty-Eight and 60/100 Dollars ($24,838.60).

155.    The unpaid amounts owed are liquidated amounts which became due on specified dates, thus, Plaintiffs are entitled to a rate of interest equal to the average accepted auction price for the last auction of fifty-two (52) week United States Treasury bills settled immediately prior to the entry of the judgment calculated daily for each specific due date and compounded annually.

## XI. <u>COUNT THREE</u>

## [UNJUST ENRICHMENT]

156.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1 through 155 of this Complaint as if fully rewritten herein.

22

157.    Between December 2001 and July 2002, at the request of the Defendants, Plaintiffs provided transportation and brokerage services.

158.    Plaintiffs rendered to Defendants work, labor, materials and services for which Defendants promised to pay the reasonable value thereof.

159.    Defendants executed UBOL and thereby acknowledged their primary liability for the transportation and brokerage charges.

160.    Plaintiffs have conferred a benefit upon the Defendants by providing the Defendants with the said transportation and brokerage services as described herein.

161.    Plaintiffs, at the time it supplied Defendants with such transportation and brokerage services, had a reasonable expectation of being compensated.

162.    The services were conferred upon Defendants at the express request and insistence of Defendants.  If Defendants are allowed to retain the benefits conferred upon them by Plaintiffs, without compensating Plaintiffs, Defendants will be unjustly enriched.

163.    The reasonable value of all the transportation and brokerage services performed by Plaintiffs for the benefit of Defendants was Eighty-Seven Thousand Four Hundred Twenty-Seven and 00/100 Dollars ($87,427.00), none of which has been paid, leaving a balance due and owing of $87,427.00.

164.    Notwithstanding repeated demands of payment for the $87,427.00 amount, Defendants have refused to pay any part of the transportation and brokerage charges due to Plaintiffs.

165.    The unpaid amounts owed are liquidated amounts which became due on specified dates, thus, Plaintiffs are entitled to a rate of interest equal to the average accepted auction price for the last auction of fifty-two (52) week United States Treasury bills settled immediately prior

23

to the entry of the judgment calculated daily for each specific due date and compounded annually.

**WHEREFORE,** Plaintiffs pray to this Court for judgment in their favor and against Defendants for actual damages, as the evidence will demonstrate, together with the legal rate of interest per annum on all such obligations from the dates on which they became due through the date of judgment, as follows:

1.    Judgment against Turnwood Industry, Inc. in the amount of Eighty-Seven Thousand Four Hundred Twenty-Seven and 00/100 Dollars ($87,427.00);

2.    Judgment against Turnwood Industry, Inc. and Menards, Inc., jointly and severally, in the amount of Eighty-one Thousand Seven Hundred Two and 00/100 Dollars ($81,702.00);

3.    Judgment against Turnwood Industry, Inc. and G&T Wood Products, jointly and severally, in the amount of Two Hundred and 00/100 Dollars ($200.00).

4.    Judgment against Turnwood Industry, Inc. and Baird Brothers Sawmill, jointly and severally, in the amount of One Hundred Seventy-five and 00/100 Dollars ($175.00);

5.    Judgment against Turnwood Industry, Inc. and Universal Building Systems, Inc., jointly and severally, in the amount of Three Hundred and 00/100 Dollars ($300.00);

6.    Judgment against Turnwood Industry, Inc. and Glacier Mouldings, Ltd., jointly and severally, in the amount of Two Thousand Six Hundred Seventy-Five and 00/100 Dollars ($2,675.00);

7.    Since all amounts are liquidated and were due on a specific date, pursuant to 28 U.S.C. 1961, Plaintiffs respectfully request interest at a rate equal to the average accepted auction price for the last auction of fifty-two (52) week United States Treasury bills settled immediately

24

*EXHIBIT A*

## SHORELINE INVOICES

| Invoice No. | Invoice Date | Shipped | Container | Delivering Carrier | Broker Amt | Tracking | Comment | Additional Signature |
|---|---|---|---|---|---|---|---|---|
| **OUTBOUND PPD** | | | | | | | | |
| TW-40527 | 05/09/02 | Turnwood | Menards, MN & WI | Shoreline | | $1,920.00 | Signed clear | |
| TW-40531 | 05/13/02 | Turnwood | Menards, MN | Shoreline | | $1,804.40 | Signed clear | Amt remaining after partial payment |
| TW-40533 | 05/24/02 | Turnwood | Menards, IN, IL & WI | Shoreline | | $3,696.60 | Signed clear | Amt remaining after partial payment |
| TW-40547 | 05/28/02 | Turnwood | Menards, IL | Shoreline | | $1,870.00 | Signed clear | |
| TW-40551 | 05/31/02 | Turnwood | Menards, MN & WI | Shoreline | | $1,931.20 | Signed clear | |
| TW-40556 | 06/07/02 | Turnwood | Menards, IN & IL | Shoreline | | $1,751.40 | Signed clear | |
| TW-40546 | 06/11/02 | Turnwood | Menards, IA & NE | Shoreline | | $2,404.00 | Signed clear | |
| TW-40562 | 06/17/02 | Turnwood | Menards, ND & SD | Shoreline | | $3,946.80 | Signed clear | |
| TW-40561 | 06/26/02 | Turnwood | Menards, IL | Shoreline | | $1,451.20 | Signed clear | |
| TW-40568 | 06/26/02 | Turnwood | Menards, IL & IN | Shoreline | | $1,768.00 | Signed clear | |
| TW-40569 | 07/01/02 | Turnwood | Menards, MI & WI | Shoreline | | $1,720.00 | Signed clear | |
| TOTAL | | | | | | $24,263.60 | | |
| **INBOUND COLLECT** | | | | | | | | |
| TW-40945 | 05/22/02 | G&T Wood Products | Turnwood | Shoreline | | $200.00 | Signed clear | |
| TW-40943 | 05/22/02 | Baird Brothers | Turnwood | Shoreline | | $175.00 | No signature | |
| TOTAL | | | | | | $375.00 | | |
| **OUTBOUND PPD** | | | | | | | | |
| SE-04063 | 01/04/02 | Turnwood | Menards, WI | Tiger | $550.00 | | Signed clear | |
| SE-04151 | 02/04/02 | Turnwood | Menards, MN | ICX & N&M | $1,625.00 | | 1 of 13 stops had exception | |
| SE-04284 | 03/12/02 | Turnwood | Menards, IL | ICX & Dohrn | $1,270.00 | | Signed clear | |
| SE-04194 | 03/12/02 | Turnwood | Menards, NE & IA | ICX, Dohrn, Brown | $2,404.00 | | 2 of 15 stops had exception | |
| TW-40530 | 05/10/02 | Turnwood | Menards, IL & IN | Zellmer | $1,106.60 | | Signed clear | |
| TW-40625 | 05/10/02 | Turnwood | Menards, IL & IN | Zellmer | $1,612.60 | | Signed clear | |
| SE-04343 | 05/16/02 | Turnwood | Menards, MN | ICX | $2,015.00 | | Signed clear | |
| TW-40419 | 05/16/02 | Turnwood | Menards, WI & MI | ICX | $1,979.00 | | Signed clear | |
| SE-04430 | 05/16/02 | Turnwood | Menards, MN | ICX & N&M | $1,898.00 | | 1 of 10 stops had exception | |
| SE-04442 | 05/16/02 | Turnwood | Menards, WI & MI | ICX & N&M | $1,433.20 | | Signed clear | |
| TW-40528 | 05/22/02 | Turnwood | Menards, MN | Valley Express | $1,945.00 | | Signed clear | |
| TW-40532 | 05/22/02 | Turnwood | Menards, WI | Tiger Express | $875.00 | | Signed clear | |
| TW-40523 | 05/22/02 | Turnwood | Menards, WI | DTC | $400.00 | | Signed clear | |
| TW-40536 | 05/24/02 | Turnwood | Menards, IL | Allura | $1,393.00 | | Signed clear | |
| TW-40548 | 05/31/02 | Turnwood | Menards, MI & WI | Dubay | $1,986.40 | | Signed clear | |
| TW-40544 | 06/06/02 | Turnwood | Menards, WI | Magnum | $850.00 | | Signed clear | |
| TW-40555 | 05/10/02 | Turnwood | Menards, MN | Kwik Kargo | $2,027.60 | | Signed clear | |
| TW-40558 | 06/11/02 | Turnwood | Menards, IN, IL | Northside | $1,197.00 | | Signed clear | |
| TW-40542 | 06/11/02 | Turnwood | Menards, IA, ND & SD | Pan Handle | $3,822.80 | | Signed clear | |
| TW-40539 | 06/11/02 | Turnwood | Menards, IA | Berg Grain | $900.00 | | Signed clear | |
| TW-40554 | 06/13/02 | Turnwood | Menards, IA, WI & MI | DesMoin/Roberts | $1,794.40 | | Signed clear | |
| TW-40559 | 06/17/02 | Turnwood | Menards, MI & WI | Valley Express | $1,804.40 | | Signed clear | |
| TW-40550 | 06/20/02 | Turnwood | Menards, MI & WI | Northeast Ohio | $1,425.60 | | Signed clear | |

RSG 09/09/2002

104207

EXHIBIT A

## SHORELINE INVOICES

| Invoice No. | Invoice Date | Shipper | Consignee | Delivering Carrier | Broker Amt | Trucking Amt | Comments | Additional Details |
|---|---|---|---|---|---|---|---|---|
| TW-40557 | 06/20/02 | Turnwood | Menards, IA, NE | Northeast | $2,258.20 | | Signed clear | |
| TW-40563 | 06/20/02 | Turnwood | Menards, IN, IL, WI | Zellmer | $1,094.00 | | Signed clear | |
| TW-40565 | 06/27/02 | Turnwood | Menards, IN & IL | Northeast | $1,498.40 | | Signed clear | |
| TW-40564 | 06/27/02 | Turnwood | Menards, WI | Northeast Ohio | $1,965.40 | | 1 of 12 stops had exception | Misroutings, redeliveries |
| SE-04260 | 06/27/02 | Turnwood | Menards, SD, ND, IA | ICX & Dohrn | $3,805.+) | | Many exceptions | Misrouted then delivered |
| TW-40552 | 07/03/02 | Turnwood | Menards, WI | Valley Express | $850.00 | | Signed clear | |
| SE-04489 | 07/03/02 | Turnwood | Menards, NE & IA | ICX, Dohrn, Brown | $2,364.00 | | 3 of 15 stops had exceptions | |
| TW-40556 | 07/08/02 | Turnwood | Menards, IL & IN | Northeast | $1,211.80 | | Signed clear | |
| TW-40504 | 07/10/02 | Turnwood | Menards, MN | Various | $1,810.00 | | Signed clear | |
| SE-04541 | 07/10/02 | Turnwood | Menards, WI & MI | ICX & N&M | $2,093.00 | | 1 of 14 stops with exception | |
| TW-40503 | 07/10/02 | Turnwood | Menards, WI | ICX & N&M | $2,174.20 | | 2 of 14 stops with exceptions | |
| **TOTAL** | | | | | **$57,438.40** | | | |

### INBOUND COLLECT

| Invoice No. | Invoice Date | Shipper | Consignee | Delivering Carrier | Broker Amt | Trucking Amt | Comments | Additional Details |
|---|---|---|---|---|---|---|---|---|
| SE-04566 | 05/09/02 | UBS/MDI | Turnwood | ICX | $300.00 | | Signed clear | |
| TW-40541 | 05/22/02 | Glacier Mouldings | Turnwood | Marlins | $2,675.00 | | Signed clear | |
| **TOTAL** | | | | | **$2,975.00** | | | |

### OTHER TRANSPORTATION SERVICES

| Invoice No. | Invoice Date | Shipper | Consignee | Delivering Carrier | Broker Amt | Trucking Amt | Comments | Additional Details |
|---|---|---|---|---|---|---|---|---|
| ST-25829 | 06/26/02 | Cherry Auto Parts | Dan's Cont. Auto | Shoreline | | $200.00 | 3rd Party - Signed clear | |
| **TOTAL** | | | | | | **$200.00** | | |

### OTHER BROKER SERVICES

| Invoice No. | Invoice Date | Shipper | Consignee | Delivering Carrier | Broker Amt | Trucking Amt | Comments | Additional Details |
|---|---|---|---|---|---|---|---|---|
| SE-04286 | 03/01/02 | Babcock Lumber | Turnwood | Lightning | $125.00 | | Truck Order Not Used | |
| TW-40515 | 04/30/02 | Babcock Lumber | Turnwood | Modular Transport | $875.00 | | Noted properly loaded | Section 7 signed |
| TW-40540 | 08/04/02 | Babcock Lumber | Turnwood | Tillery | $975.00 | | Signed clear | Section 7 signed |
| TW-40534 | 05/14/02 | Miller Wood Designs | Turnwood | Hunter | $200.00 | | Signed clear | Consignor paid other invoice with release |
| **TOTAL** | | | | | **$2,175.00** | | | |

| | |
|---|---|
| TOTAL TRANSPORTATION SERVICES | $24,838.60 |
| TOTAL BROKER SERVICES | $62,588.40 |
| TOTAL DUE SHORELINE | $87,427.00 |

RSG 09/09/2002

104607

FILED

OCT 16 2002

ECF CASE

### THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SHORELINE TRANSPORTATION, INC. and SHORELINE EXPRESS, INC., | ) ) ) | CASE NO.: 1:02CV1775 |
| Plaintiffs, | ) ) | JUDGE: GAUGHAN |
| vs. | ) ) | **PLAINTIFFS' NOTICE OF VOLUNTARY DISMISSAL OF ACTION** |
| TURNWOOD INDUSTRY, INC., et al., | ) ) | |
| Defendants. | ) | |

Now come Plaintiffs, by and through their undersigned counsel, and pursuant to FED. R. CIV. P. 41(a)(1)(i) hereby voluntarily give the Court notice of the decision to dismiss the above-captioned matter. None of the Defendants to this action has served an Answer, or a Motion for Summary Judgment, upon the Plaintiffs. Thus, this voluntary notice dismissing the action by Plaintiffs is proper.

Respectfully submitted,

So Ordered.

10/17/02

s/ Mickey R. Dragash
Mickey R. Dragash-(#0073340) mdragash@ralaw.com
George W. Rooney, Jr. (#0004961) grooney@ralaw.com
ROETZEL & ANDRESS, L.P.A.
1375 East Ninth Street, Suite 1000
One Cleveland Center
Cleveland, Ohio 44114
(216) 623-0150 *telephone*
(216) 623-0134 *facsimile*

COUNSEL FOR PLAINTIFFS

ECF #16

prior to the entry of the judgment calculated daily for each specific due date and compounded annually.

        8.      Reasonable attorneys' fees and costs; and

        9.      Such other and/or alternative legal and/or equitable relief evidence may demonstrate and/or this Court deems appropriate.

                    Respectfully submitted,

Mickey R. Dragash-(#0073340) mdragash@ralaw.com
George W. Rooney, Jr. (#0004961) grooney@ralaw.com
ROETZEL & ANDRESS, L.P.A.
1375 East Ninth Street, Suite 1000
One Cleveland Center
Cleveland, Ohio 44114
(216) 623-0150 *telephone*
(216) 623-0134 *facsimile*

COUNSEL FOR PLAINTIFFS

103013_9

# Exhibit D



Mr. Mickey Dragash
Roetzell and Andress LPA
1375 East Ninth Street
One Cleveland Center
Cleveland Ohio 44114

RE: Shoreline Transportation

Dear Sir,

We are forwarding you a check for the amount of $84,377.00 number 2911 for Shoreline
Transportation. This does not release Shoreline Transportation Inc ,Shoreline Express
Inc. and it's affiliates and vendors from prosecution for damaged items and paid freight
bills that they do not have signed proof of deliveries and the freight involved in these
deliveries. By cashing this check Shoreline Transportation Inc, Shoreline Express
releases Turnwood Industries and all other litigants from case number 1:01Cv1755 and
any other further litigation.

Regards,

Steve Svilar

# Exhibit E

13

# Customer Profile
## BY BILL TO COMPANY

### TORNWOOD INDUSTRIES

**MONTH TO DATE**

| BILLED | $0.00 |
|---|---|
| PAID | $0.00 |

13015 YORK DELTA DRIVE

NORTH ROYALTON, OH 441
STEVE  DONNA  DORIS
440-582-4970 X 201

**YEAR T**

| BILLED | |
|---|---|
| PAID | |

**BILL TO TOTAL**

| BILLED | $207,255.00 |
|---|---|
| PAID | $207,255.00 |

| INVOICE # | SHIP DATE | STATUS | LAST PAYMENT | CHECK # | AMOUNT PAID | TOTAL OWED | B |
|---|---|---|---|---|---|---|---|
| SE-03940 | 11/21/2001 | PAID | 25-Jan-02 | 2023 | $1,425.00 | $1,425.00 | |
| SE-03996 | 12/4/2001 | PAID | 25-Jan-02 | 2023 | $1,842.00 | $1,842.00 | |
| SE-04010 | 12/5/2001 | PAID | 13-Feb-02 | 2099 | $1,975.00 | $1,975.00 | |
| SE-04014 | 12/6/2001 | PAID | 13-Feb-02 | 2099 | $750.00 | $750.00 | |
| SE-04024 | 12/10/2001 | PAID | 13-Feb-02 | 2099 | $1,851.00 | $1,851.00 | |
| SE-04033 | 12/13/2001 | PAID | 13-Mar-02 | 2196 | $650.00 | $650.00 | |
| SE-04040 | 12/13/2001 | PAID | 13-Mar-02 | 2196 | $3,805.00 | $3,805.00 | |
| SE-04053 | 12/17/2001 | PAID | 25-Jan-02 | 2023 | $2,174.00 | $2,174.00 | |
| SE-04063 | 12/19/2001 | PAID | 10-Oct-02 | 2911 | $550.00 | $550.00 | |
| SE-04064 | 12/18/2001 | PAID | 13-Mar-02 | 2196 | $1,495.00 | $1,495.00 | |
| SE-04097 | 12/21/2001 | PAID | 25-Jan-02 | 2023 | $2,364.00 | $2,364.00 | |
| SE-04114 | 1/3/2002 | PAID | 13-Feb-02 | 2099 | $3,765.00 | $3,765.00 | |
| SE-04125 | 1/4/2002 | PAID | 13-Feb-02 | 2099 | $675.00 | $675.00 | |
| SE-04136 | 1/8/2002 | PAID | 13-Mar-02 | 2196 | $1,811.00 | $1,811.00 | |
| SE-04142 | 1/9/2002 | PAID | 15-Mar-02 | 2215 | $2,174.00 | $2,174.00 | |
| SE-04144 | 1/10/2002 | PAID | 15-Mar-02 | 2215 | $2,093.00 | $2,093.00 | |
| SE-04146 | 1/10/2002 | PAID | 13-Feb-02 | 2099 | $330.00 | $330.00 | |
| SE-04151 | 1/14/2002 | PAID | 10-Oct-02 | 2911 | $1,850.00 | $1,850.00 | |
| SE-04162 | 1/15/2002 | PAID | 13-May-02 | 2424 | $2,015.00 | $2,015.00 | |
| SE-04168 | 1/18/2002 | PAID | 29-Apr-02 | 2348 | $1,495.00 | $1,495.00 | |
| SE-04171 | 1/17/2002 | PAID | 15-Mar-02 | 2215 | $775.00 | $775.00 | |
| SE-04178 | 1/21/2002 | PAID | 17-Apr-02 | 2314 | $1,210.00 | $1,210.00 | |
| SE-04191 | 1/23/2002 | PAID | 09-Aug-02 | 11907 | $250.00 | $250.00 | |
| SE-04194 | 1/23/2002 | PAID | 10-Oct-02 | 2911 | $2,404.00 | $2,404.00 | |
| SE-04200 | 1/25/2002 | PAID | 15-Mar-02 | 2215 | $875.00 | $875.00 | |
| SE-04208 | 1/25/2002 | PAID | 13-Feb-02 | 2099 | $225.00 | $225.00 | |

Friday, January 23, 2004

SHR00200

17

# Customer Profile
## BY BILL TO COMPANY

| INVOICE # | SHIP DATE | STATUS | LAST PAYMENT | CHECK # | AMOUNT PAID | TOTAL OWED | B |
|-----------|-----------|--------|--------------|---------|-------------|------------|---|
| TW-40563 | 6/10/2002 | PAID | 10-Oct-02 | 2911 | $1,094.00 | $1,094.00 | |
| TW-40564 | 6/13/2002 | PAID | 10-Oct-02 | 2911 | $1,965.40 | $1,965.40 | |
| TW-40565 | 6/13/2002 | PAID | 10-Oct-02 | 2911 | $1,498.40 | $1,498.40 | |
| TW-40566 | 6/17/2002 | PAID | 10-Oct-02 | 2911 | $1,211.80 | $1,211.80 | |
| TW-40568 | 6/17/2002 | PAID | 10-Oct-02 | 2911 | $1,768.00 | $1,768.00 | |
| TW-40569 | 6/24/2002 | PAID | 10-Oct-02 | 2911 | $1,720.00 | $1,720.00 | |

Friday, January 23, 2004

SHR00204

14

# Customer Profile
## BY BILL TO COMPANY

| INVOICE # | SHIP DATE | STATUS | LAST PAYMENT | CHECK # | AMOUNT PAID | TOTAL OWED | B |
|-----------|-----------|--------|--------------|---------|-------------|------------|---|
| SE-04219 | 1/29/2002 | PAID | 13-May-02 | 2424 | $2,217.00 | $2,217.00 | |
| SE-04237 | 2/1/2002 | PAID | 15-Mar-02 | 2215 | $200.00 | $200.00 | |
| SE-04260 | 2/11/2002 | PAID | 10-Oct-02 | 2911 | $3,805.40 | $3,805.40 | |
| SE-04265 | 2/7/2002 | PAID | 17-Apr-02 | 2314 | $1,604.00 | $1,604.00 | |
| SE-04266 | 2/8/2002 | PAID | 10-Oct-02 | 2911 | $125.00 | $125.00 | |
| SE-04267 | 2/8/2002 | PAID | 15-Mar-02 | 2215 | $2,150.00 | $2,150.00 | |
| SE-04278 | 2/11/2002 | PAID | 17-Apr-02 | 2314 | $875.00 | $875.00 | |
| SE-04283 | 2/11/2002 | PAID | 29-Apr-02 | 2348 | $2,093.00 | $2,093.00 | |
| SE-04284 | 2/12/2002 | PAID | 10-Oct-02 | 2911 | $1,495.00 | $1,495.00 | |
| SE-04287 | 2/13/2002 | PAID | 17-Apr-02 | 2314 | $400.00 | $400.00 | |
| SE-04300 | 2/14/2002 | PAID | 17-Apr-02 | 2314 | $560.00 | $560.00 | |
| SE-04305 | 2/15/2002 | PAID | 13-Mar-02 | 2196 | $250.00 | $250.00 | |
| SE-04308 | 2/15/2002 | PAID | 29-Apr-02 | 2348 | $850.00 | $850.00 | |
| SE-04310 | 2/18/2002 | PAID | 29-Apr-02 | 2348 | $2,174.00 | $2,174.00 | |
| SE-04334 | 2/21/2002 | PAID | 29-Apr-02 | 2348 | $1,850.00 | $1,850.00 | |
| SE-04343 | 2/25/2002 | PAID | 10-Oct-02 | 2911 | $2,015.00 | $2,015.00 | |
| SE-04348 | 2/22/2002 | PAID | 17-Apr-02 | 2314 | $250.00 | $250.00 | |
| SE-04363 | 2/27/2002 | PAID | 13-May-02 | 2424 | $250.00 | $250.00 | |
| SE-04371 | 2/28/2002 | PAID | 13-May-02 | 2424 | $2,404.00 | $2,404.00 | |
| SE-04389 | 2/26/2002 | PAID | 29-Apr-02 | 2348 | $175.00 | $175.00 | |
| SE-04393 | 3/4/2002 | PAID | 18-Jun-02 | 2531 | $3,722.00 | $3,722.00 | |
| SE-04397 | 3/5/2002 | PAID | 03-May-02 | 2364 | $1,495.00 | $1,495.00 | |
| SE-04403 | 3/1/2002 | PAID | 29-Apr-02 | 2348 | $225.00 | $225.00 | |
| SE-04419 | 3/6/2002 | PAID | 10-Oct-02 | 2911 | $1,979.00 | $1,979.00 | |
| SE-04422 | 3/7/2002 | PAID | 13-May-02 | 2424 | $1,950.00 | $1,950.00 | |
| SE-04423 | 3/8/2002 | PAID | 03-May-02 | 2364 | $1,400.00 | $1,400.00 | |
| SE-04430 | 3/7/2002 | PAID | 10-Oct-02 | 2911 | $1,898.00 | $1,898.00 | |
| SE-04442 | 3/11/2002 | PAID | 10-Oct-02 | 2911 | $1,433.20 | $1,433.20 | |
| SE-04452 | 3/12/2002 | PAID | 13-May-02 | 2424 | $1,901.00 | $1,901.00 | |
| SE-04462 | 3/14/2002 | PAID | 03-May-02 | 2364 | $1,531.40 | $1,531.40 | |
| SE-04463 | 3/13/2002 | PAID | 22-May-02 | 2437 | $1,613.00 | $1,613.00 | |
| SE-04489 | 3/18/2002 | PAID | 10-Oct-02 | 2911 | $2,364.00 | $2,364.00 | |
| SE-04491 | 3/18/2002 | PAID | 13-May-02 | 2424 | $250.00 | $250.00 | |
| SE-04494 | 3/19/2002 | PAID | 13-May-02 | 2424 | $250.00 | $250.00 | |
| SE-04517 | 3/23/2002 | PAID | 18-Jun-02 | 2531 | $3,765.00 | $3,765.00 | |
| SE-04521 | 3/25/2002 | PAID | 13-May-02 | 2424 | $250.00 | $250.00 | |
| SE-04541 | 3/26/2002 | PAID | 10-Oct-03 | 2911 | $2,093.00 | $2,093.00 | |
| SE-04551 | 3/28/2002 | PAID | 30-May-02 | 2469 | $250.00 | $250.00 | |
| SE-04562 | 3/29/2002 | PAID | 06-Jun-02 | 2505 | $2,650.00 | $2,650.00 | |
| SE-04566 | 4/1/2002 | PAID | 11-Oct-02 | 220226 | $300.00 | $300.00 | |

Friday, January 23, 2004

SHR00201

15

# Customer Profile
## BY BILL TO COMPANY

| INVOICE # | SHIP DATE | STATUS | LAST PAYMENT | CHECK # | AMOUNT PAID | TOTAL OWED | B |
|-----------|-----------|--------|--------------|---------|-------------|------------|---|
| SE-04589 | 4/4/2002 | PAID | 22-May-02 | 2437 | $1,904.00 | $1,904.00 | |
| SE-04596 | 4/4/2002 | PAID | 06-Jun-02 | 2505 | $1,891.00 | $1,891.00 | |
| SE-04600 | 4/5/2002 | PAID | 13-May-02 | 2424 | $1,896.60 | $1,896.60 | |
| ST-24082 | 11/30/2001 | PAID | 13-Feb-02 | 2099 | $375.00 | $375.00 | |
| ST-24166 | 12/11/2001 | PAID | 13-Feb-02 | 2099 | $750.00 | $750.00 | |
| ST-24322 | 1/2/2002 | PAID | 13-Feb-02 | 2099 | $300.00 | $300.00 | |
| ST-24348 | 1/4/2002 | PAID | 13-Feb-02 | 2099 | $1,858.40 | $1,858.40 | |
| ST-24455 | 1/17/2002 | PAID | 13-Mar-02 | 2196 | $1,790.00 | $1,790.00 | |
| ST-24562 | 1/29/2002 | PAID | 15-Mar-02 | 2215 | $1,048.00 | $1,048.00 | |
| ST-24645 | 2/4/2002 | PAID | 13-Feb-02 | 2099 | $50.00 | $50.00 | |
| ST-24669 | 2/8/2002 | PAID | 17-Apr-02 | 2314 | $1,811.00 | $1,811.00 | |
| ST-24708 | 2/13/2002 | PAID | 17-Apr-02 | 2314 | $1,671.00 | $1,671.00 | |
| ST-24732 | 2/14/2002 | PAID | 17-Apr-02 | 2314 | $300.00 | $300.00 | |
| ST-24735 | 2/15/2002 | PAID | 17-Apr-02 | 2314 | $1,210.00 | $1,210.00 | |
| ST-24766 | 2/18/2002 | PAID | 17-Apr-02 | 2314 | $175.00 | $175.00 | |
| ST-24782 | 2/19/2002 | PAID | 17-Apr-02 | 2314 | $500.00 | $500.00 | |
| ST-24816 | 2/22/2002 | PAID | 17-Apr-02 | 2314 | $300.00 | $300.00 | |
| ST-24950 | 3/6/2002 | PAID | 29-Apr-02 | 2348 | $300.00 | $300.00 | |
| ST-24960 | 3/7/2002 | PAID | 29-Apr-02 | 2348 | $250.00 | $250.00 | |
| ST-24970 | 3/8/2002 | PAID | 29-Apr-02 | 2348 | $1,782.00 | $1,782.00 | |
| ST-25012 | 3/12/2002 | PAID | 29-Apr-02 | 2348 | $325.00 | $325.00 | |
| ST-25013 | 3/12/2002 | PAID | 17-Apr-02 | 2314 | $150.00 | $150.00 | |
| ST-25048 | 3/15/2002 | PAID | 03-May-02 | 2364 | $1,198.40 | $1,198.40 | |
| ST-25119 | 3/25/2002 | PAID | 13-May-02 | 2424 | $1,451.20 | $1,451.20 | |
| ST-25135 | 3/25/2002 | PAID | 29-Apr-02 | 2348 | $150.00 | $150.00 | |
| ST-25829 | | PAID | 10-Oct-02 | 2911 | $200.00 | $200.00 | |
| TW-40502 | 4/8/2002 | PAID | 13-May-02 | 2424 | $275.00 | $275.00 | |
| TW-40503 | 4/8/2002 | PAID | 10-Oct-02 | 2911 | $2,174.20 | $2,174.20 | |
| TW-40504 | 4/8/2002 | PAID | 10-Oct-02 | 2911 | $1,810.00 | $1,810.00 | |
| TW-40506 | 4/10/2002 | PAID | 13-May-02 | 2424 | $1,250.40 | $1,250.40 | |
| TW-40508 | 4/12/2002 | PAID | 30-Aug-02 | 87306 | $1,300.00 | $1,300.00 | |
| TW-40509 | 4/11/2002 | PAID | 22-May-02 | 2437 | $1,762.60 | $1,762.60 | |
| TW-40510 | 4/11/2002 | PAID | 13-May-02 | 2424 | $300.00 | $300.00 | |
| TW-40512 | 4/16/2002 | PAID | 06-Jun-02 | 2505 | $125.00 | $125.00 | |
| TW-40513 | 4/16/2002 | PAID | 19-Aug-02 | 21869 | $250.00 | $250.00 | |
| TW-40514 | 4/17/2002 | PAID | 30-May-02 | 2469 | $2,362.00 | $2,362.00 | |
| TW-40515 | 4/18/2002 | PAID | 10-Oct-02 | 2911 | $875.00 | $875.00 | |
| TW-40516 | 4/16/2002 | PAID | 30-May-02 | 2469 | $250.00 | $250.00 | |
| TW-40517 | 4/17/2002 | PAID | 22-May-02 | 2437 | $250.00 | $250.00 | |
| TW-40518 | 4/19/2002 | PAID | 06-Jun-02 | 2505 | $3,805.00 | $3,805.00 | |

Friday, January 23, 2004

SHR00202

/ 6

# Customer Profile
## BY BILL TO COMPANY

| INVOICE # | SHIP DATE | STATUS | LAST PAYMENT | CHECK # | AMOUNT PAID | TOTAL OWED | B |
|-----------|-----------|--------|--------------|---------|-------------|------------|---|
| TW-40519 | 4/20/2002 | PAID | 30-May-02 | 2469 | $1,495.00 | $1,495.00 | |
| TW-40520 | 4/23/2002 | PAID | 06-Jun-02 | 2505 | $2,093.00 | $2,093.00 | |
| TW-40521 | 4/23/2002 | PAID | 06-Jun-02 | 2505 | $1,944.00 | $1,944.00 | |
| TW-40522 | 4/24/2002 | PAID | 18-Jun-02 | 2531 | $250.00 | $250.00 | |
| TW-40523 | 4/26/2002 | PAID | 10-Oct-02 | 2911 | $400.00 | $400.00 | |
| TW-40524 | 4/26/2002 | PAID | 30-May-02 | 2469 | $1,851.00 | $1,851.00 | |
| TW-40525 | 4/27/2002 | PAID | 10-Oct-02 | 2911 | $1,612.00 | $1,612.00 | |
| TW-40527 | 5/2/2002 | PAID | 10-Oct-02 | 2911 | $1,920.00 | $1,920.00 | |
| TW-40528 | 5/1/2002 | PAID | 10-Oct-02 | 2911 | $1,945.00 | $1,945.00 | |
| TW-40529 | 5/6/2002 | PAID | 19-Aug-02 | 21869 | $200.00 | $200.00 | |
| TW-40530 | 5/1/2002 | PAID | 10-Oct-02 | 2911 | $1,106.60 | $1,106.60 | |
| TW-40531 | 5/1/2002 | PAID | 10-Oct-02 | 2911 | $1,804.40 | $1,804.40 | |
| TW-40532 | 5/9/2002 | PAID | 10-Oct-02 | 2911 | $875.00 | $875.00 | |
| TW-40533 | 5/12/2002 | PAID | 10-Oct-02 | 2911 | $3,696.60 | $3,696.60 | |
| TW-40534 | 5/9/2002 | PAID | 10-Oct-02 | 2911 | $200.00 | $200.00 | |
| TW-40535 | 5/10/2002 | PAID | 17-May-02 | 2424 | $200.00 | $200.00 | |
| TW-40536 | 5/15/2002 | PAID | 10-Oct-02 | 2911 | $1,393.00 | $1,393.00 | |
| TW-40537 | 5/15/2002 | PAID | 19-Aug-02 | 283 | $200.00 | $200.00 | |
| TW-40538 | 5/15/2002 | PAID | 01-Aug-02 | 443 | $200.00 | $200.00 | |
| TW-40539 | 5/15/2002 | PAID | 10-Oct-02 | 2911 | $900.00 | $900.00 | |
| TW-40540 | 5/15/2002 | PAID | 10-Oct-02 | 2911 | $975.00 | $975.00 | |
| TW-40541 | 5/16/2002 | PAID | 10-Oct-02 | 2911 | $2,675.00 | $2,675.00 | |
| TW-40542 | 5/16/2002 | PAID | 10-Oct-02 | 2911 | $3,822.80 | $3,822.80 | |
| TW-40543 | 5/17/2002 | PAID | 03-Oct-02 | 28002 | $175.00 | $175.00 | |
| TW-40544 | 5/17/2002 | PAID | 10-Oct-02 | 2911 | $850.00 | $850.00 | |
| TW-40545 | 5/21/2002 | PAID | 10-Oct-02 | 2911 | $200.00 | $200.00 | |
| TW-40546 | 5/13/2002 | PAID | 10-Oct-02 | 2911 | $2,404.00 | $2,404.00 | |
| TW-40547 | 5/21/2002 | PAID | 10-Oct-02 | 2911 | $1,870.00 | $1,870.00 | |
| TW-40548 | 5/22/2002 | PAID | 10-Oct-02 | 2911 | $1,986.40 | $1,986.40 | |
| TW-40550 | 5/23/2002 | PAID | 10-Oct-02 | 2911 | $1,425.60 | $1,425.60 | |
| TW-40551 | 5/22/2002 | PAID | 10-Oct-02 | 2911 | $1,931.20 | $1,931.20 | |
| TW-40552 | 5/24/2002 | PAID | 10-Oct-02 | 2911 | $850.00 | $850.00 | |
| TW-40554 | 5/29/2002 | PAID | 10-Oct-02 | 2911 | $1,794.40 | $1,794.40 | |
| TW-40555 | 5/30/2002 | PAID | 10-Oct-02 | 2911 | $2,027.60 | $2,027.60 | |
| TW-40556 | 5/31/2002 | PAID | 10-Oct-02 | 2911 | $1,751.40 | $1,751.40 | |
| TW-40557 | 5/31/2002 | PAID | 10-Oct-02 | 2911 | $2,258.20 | $2,258.20 | |
| TW-40558 | 5/31/2002 | PAID | 10-Oct-02 | 2911 | $1,197.00 | $1,197.00 | |
| TW-40559 | 6/7/2002 | PAID | 10-Oct-02 | 2911 | $1,804.40 | $1,804.40 | |
| TW-40561 | 6/7/2002 | PAID | 10-Oct-02 | 2911 | $1,451.20 | $1,451.20 | |
| TW-40562 | 6/8/2002 | PAID | 10-Oct-02 | 2911 | $3,946.80 | $3,946.80 | |

Friday, January 23, 2004

SHR00203